UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:21-CR-12-GFVT-MAS |
| v. ) | |
| ) | |
| KENDRICK LAMAR FLINTROY, ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION**

Running up an embankment on the side of the interstate with law enforcement giving chase on foot, Defendant Kendrick Lamar Flintroy ("Flintroy) discarded two backpacks up and over a barbed wire fence.  Flintroy then ran the away from the fence in his continued (albeit unsuccessful) effort to evade law enforcement.  The sole issue before the Court is whether law enforcement's seizure and eventual search of the backpacks was permissible.  Because the Court believes it was, the Court recommends that the District Judge deny Flintroy's motion to suppress.

**I.   FACTS AND PROCEDURAL BACKGROUND**

The pertinent facts are straightforward.  At approximately 1:30 a.m. on December 7, 2020, Franklin County Sheriff's Office Deputy Phillip Ray ("Deputy Ray") observed a black 2014 Chevy Impala travelling on Versailles Road in Frankfort, Kentucky.  [Hearing Recording at 06:00–06:30;[1] DE 17-1 (KYIBRS Report)].  After the car entered onto Interstate 64 westbound, Deputy Ray paced the car for five miles noting that the car was exceeding the posted speed limit. Consequently, Deputy Ray initiated his emergency lights and signaled for the vehicle to stop.

---

[1] The audio recording, as reflected in the DE 27 Minute Entry, is the official transcript for this proceeding.

1

[Hearing Recording at 06:30]. The driver of the vehicle complied. [*Id.*]. As soon as the Impala came to a stop, however, the passenger door opened and Flintroy (then unknown to Deputy Ray) began to flee from the vehicle on foot, carrying two backpacks. [*Id.* at 06:30–06:50]. Deputy Ray immediately exited his cruiser and pursued Flintroy on foot.[2] [*Id.* at 7:55]. At the same time, the driver of the Impala, Jack Page ("Page"), sped away. [*Id.* at 08:15].

Deputy Ray trailed Flintroy as he ran across the road median, across an on-ramp to the interstate, and up an embankment, at which point Flintroy encountered a barbed wire fence. [*Id.* at 08:30–08:47]. Deputy Ray testified that, during the chase, he repeatedly identified himself as law enforcement and unsuccessfully commanded Flintroy to stop. [*Id.* at 08:47–08:55]. Upon reaching the fence, Flintroy tossed the two backpacks over the fence and, per Deputy Ray, appeared to contemplate climbing the fence. [*Id.* at 08:55–09:02]. However, upon realizing that Deputy Ray was quickly approaching him, Flintroy turned away from the fence and ran back toward the interstate at angle away from Deputy Ray. [*Id.* at 09:05–09:12]. Both backpacks were left on the opposite side of the fence where Flintroy had thrown them. After running for roughly twenty feet, Flintroy tripped and fell; when Flintroy attempted to raise himself off the ground and flee again, Deputy Ray deployed his taser, immobilizing Flintroy. [*Id.* at 09:15–09:35]. Deputy Ray was then able to handcuff Flintroy, and Flintroy was compliant throughout the remainder of the arrest process.

Immediately after he secured Flintroy, Deputy Ray, with the assistance of additionally arrived law enforcement, secured the two backpacks. [*Id.* at 14:26–14:45]. Until their seizure, the backpacks remained exactly where Flintroy had left them on the opposite side of the fence adjacent

---

[2] Deputy Ray testified that, given how quickly the events unfolded after the Impala stopped, he did not have an opportunity to activate his body-worn camera during the pursuit of Flintroy. [Hearing Recording at 31:35; *see also* DE 17-3].

to a public road, Leonardwood Drive. [*Id*.]. Upon searching the backpacks on-scene, officers located nine vacuum-sealed packages containing suspected crystal methamphetamine. [*Id.* at 21:40–21:54]. Deputy Ray also searched Flintroy, but he found nothing incriminating on Flintroy's person. [*Id.* at 23:50–24:00].

After Flintroy was transported to the hospital as a precaution due to the taser deployment, Deputy Ray advised Shelby County law enforcement that Page had fled. [DE 17-1]. With the assistance of a tip from a citizen who observed the traffic stop and fleeing Impala, law enforcement located and arrested Page and then seized and searched the Impala. In it, officers located a handgun under the driver's seat, as well as three cellphones in an unspecified location in the vehicle—two belonged to Flintroy, and one belonged to Page. [*Id.*; *see also* Hearing Recording at 23:40–25:00].

In June 2021, based on the above-described events, the grand jury returned a single-count Indictment against Flintroy, alleging that he possessed with intent to distribute 50 grams or more of actual methamphetamine on December 7, 2020, in violation of 21 U.S.C. § 841(a). [DE 1]. In July 2021, Flintroy filed the instant motion [DE 17], which the Government opposed. [DE 19]. The Court conducted an evidentiary hearing on August 3, 2021 and heard testimony from Deputy Ray and arguments of counsel. [DE 27]. The suppression motion is ripe for review and resolution.

## II.   ANALYSIS

Flintroy seeks "to suppress evidence obtained as a result of his unlawful arrest and the unlawful search of the backpacks following the traffic stop." [DE 17 at Page ID # 47]. Notably, Deputy Ray testified that no evidence was obtained because of Flintroy's arrest. [Hearing Recording at 24:00].[3] Thus, the only issue is whether law enforcement lawfully seized and

---

[3] Because no evidence was obtained on Flintroy's person because of his arrest, the Court need not comprehensively analyze or resolve, for suppression purposes, Flintroy's contention that his arrest was unlawful. Nonetheless, given Flintroy's on-foot flight across an interstate highway, the facts of record indicate that Deputy Ray likely had authority to arrest Flintroy for fleeing or

3

searched the two backpacks that Flintroy tossed over the fence adjacent to Leonardwood Drive. The United States asserts that, at the time law enforcement reached the backpacks, they were abandoned property, permitting officers to freely take and search them without probable cause. Flintroy challenges this characterization of the events. Based upon the undisputed facts, the Court concludes that the backpacks were abandoned, and officers were free to search them absent a search warrant or probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. Ordinarily, law enforcement may search property only pursuant to a valid warrant, supported by probable cause, or when a recognized exception to the warrant requirement applies. However, when a suspect, "immediately prior to a police encounter, throw[s] away [an] item[] containing incriminating evidence," the "Fourth Amendment offers no bar to its seizure." *United States v. Dillard*, 78 F. App'x 505, 512 (6th Cir. 2003). The Fourth Amendment's application hinges on a reasonable expectation of privacy in the seized evidence, and "[t]here is no reasonable expectation

---

evading police in the first degree, a Class D felony. *See* KRS § 520.095(b)(2) (prohibiting a pedestrian that has intent to flee and has knowingly disobeyed officer commands from fleeing or eluding the officer in a manner that creates a substantial risk of serious injury); KRS § 431.005 (permitting an officer to make an arrest when, *inter alia*, he observes the commission of felony in his presence or perceives probable cause to believe that a felony has been committed). Notably, Flintroy does not challenge or substantively discuss the impoundment and search of the Impala that yielded the handgun and three cellphones—two belonging to Flintroy, though the record does not confirm how officers identified the two phones as Flintroy's. The record ultimately contains relatively little detail about that process and Page's arrest. Because Flintroy expressly limits his suppression motion to evidence obtained as a result of his own arrest and during the search of the backpacks, the Court does not address the phones or handgun. In any event, the United States confirmed via proffer at the suppression hearing that it does not intend to use any evidence from Flintroy's cellphones in the instant prosecution. [Hearing Recording at 45:45–46:37].

of privacy in an object after it has been thrown away[.]" *United States v. Dillard*, 78 F. App'x 505, 512 (6th Cir. 2003). This is true even if a suspect "abandons" the object while fleeing from law enforcement—indeed, the abandonment principle applies even where the show of police authority triggering such flight is an unlawful one, provided the suspect is not yet in custody at the time he discards the evidence. *See United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) (discussing *California v. Hodari D.*, 499 U.S. 621 (1991)).

The rule established by the Supreme Court in *Hodari D.* and applied by the Sixth Circuit in *Martin* controls in this case. As explained in *Martin*,

> [i]n *Hodari D.*, the Supreme Court established the rule that when a suspect refuses to submit to a show of authority by the police, the suspect is not seized by the police until such time as he or she submits or is forced to submit to police authority. As such, because a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure. This rule applies . . . even when the show of authority is an unlawful one.

*Martin*, 399 F.3d at 752 (internal citations omitted). In *Martin*, patrol officers approached Defendant Martin, intending to arrest him for trespassing; ignoring the officers' verbal commands to stop, Martin led them on a foot chase. *Id.* During the pursuit, Martin "tossed away a revolver." *Id.* Officers subsequently apprehended and arrested Martin. The Court concluded that Martin had not yet been seized by law enforcement at the time he tossed the firearm, as he was then still fleeing. and the firearm was thus abandoned, eliminating any Fourth Amendment concerns surrounding its retrieval and admission into evidence during Martin's trial. *Id.* at 753.

Like in *Martin*, Flintroy fled in active resistance to Deputy Ray's show of authority.[4] Flintroy tossed the backpacks over the fence into the space adjoining a public road and then fled

---

[4] As *Martin* and *Hodari D.* confirm, it is irrelevant to the analysis whether Deputy Ray's commands to Flintroy and his show of authority upon pursuit were lawful. The Court need not confront the issue, as Flintroy discarded the backpacks pre-seizure.

in the opposite direction of the fence. All of this was unquestionably before his submission to police authority occurred. In other words, Flintroy was not yet "seized" for Fourth Amendment purposes. This undisputed sequence demonstrates that, at least when Flintroy decided against climbing the fence and, instead, ran away from the backpacks, he had relinquished any reasonable expectation of privacy in the backpacks' contents. *See also Dillard*, 78 F. App'x at 512 (finding no clear error in the district court's determination that the defendant's "conduct did not exhibit an expectation of privacy in" a seized item where he "threw the item on the ground when he realized the police were approaching"); *accord United States v. Collis*, 766 F.2d 219, 222 (6th Cir. 1985) (holding that the defendant lacked standing to challenge the warrantless search of a bag that he tossed over a fence while fleeing police at an airport, as he lacked any expectation of privacy in the abandoned bag).[5] Although Flintroy maybe intended to climb the fence himself and retrieve the backpacks, Flintroy decided not to do so upon realizing that Deputy Ray was approaching. Rather, Flintroy fled from that location. At this point, the backpacks were affirmatively abandoned on the side of a public road, visible and available to any passerby. *See Dillard*, 78 F. App'x at 518 (Clay, J., dissenting) (emphasizing the importance of an "*affirmative disclaimer* (through actions or words) before a court may determine that the property at issue was abandoned" and characterizing the action of "tossing or dropping [ ] property while in flight from the police" as a satisfactory affirmative disclaimer per prevailing case law) (emphasis in original).

Flintroy does not deny these facts, but suggests that the backpacks were not abandoned because he intended to retrieve them at some future, undetermined date. Yet, it does not matter for Fourth Amendment purposes if Flintroy had a *desire* to keep the backpacks—and the

---

[5] Though pre-*Hodari D.*, *Collis* is consistent with the rule there established and further illustrates the abandonment principle's applicability on the instant facts.

methamphetamine they contained—or that he discarded them only because of Deputy Ray's pursuit. In fact, such a notion is typically true in pre-seizure abandonment cases, including *Hodari D.*, *Martin*, and *Dillard*. No matter what could have hypothetically happened in the future, the fact remains that Flintroy lost any *expectation* of privacy in the backpacks and their contents when he tossed them over the fence and fled from police in the opposite direction. *See Martin*, 399 F.3d at 753 ("[The] defendant did not submit to the show of authority made by the officers. Instead of submitting, he attempted to flee. In the process of fleeing, he discarded his revolver. Because he had not been seized when he discarded his revolver, under *Hodari D.*, he abandoned it[.]").

Consistent with the governing cases, Flintroy's conduct constitutes abandonment of the backpacks for Fourth Amendment purposes, and police were free to seize and search them unrestrained by Fourth Amendment concerns. The Court perceives no basis for suppressing the evidence located within the backpacks as Flintroy urges.

### III.  CONCLUSION

Accordingly, for all of the reasons discussed, the Court **RECOMMENDS** that the District Judge **DENY** Flintroy's suppression motion [DE 17]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by § 636(b) (1), FED. R. CRIM. P. 59(b), and local rule, **within fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.

Entered this the 12th day of August, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge

7